G. Robert Witmer, J.
This is a proceeding under CPLR 5239 to determine priority as between an income levy under 5231 of said act and a wage assignment under article 3-A of the Personal Property Law.
It appears without dispute that on July 12, 1963 one David O. Baker, a resident of Monroe County, borrowed money from petitioner and gave as security a wage assignment. When said Baker was more than 21 days in default in the payment of his said loan, petitioner on November 14, 1963 gave him the 10-day written notice provided for in section 48 of the Personal Property Law demanding payment. Baker failed to pay as demanded, and on December 10, 1963 petitioner filed said assignment of wages with the Monroe County Clerk, as provided in sections 47 and 47-a of said Personal Property Law, showing that the sum of $864 remained unpaid on Baker’s indebtedness to it. On the same day petitioner mailed a copy of said assignment of wages to respondent Carl Trick, Baker’s employer, which copy was received by said Trick on December 11, 1963. Pursuant to that assignment Mr. Trick withheld 10% from Baker’s wages weekly thereafter until December 26, 1963 when the respondent Sheriff of Monroe County served an income execution on Trick. Until that time, Trick had withheld $31.14 from Baker’s wages, and on December 30, 1963 he paid it to petitioner ; but although he indicated he would continue to withhold 10% from Baker’s wages, he declined to pay it to petitioner or the Sheriff until a court should determine which has priority therein.
It further appears that on December 28, 1961 the First National Bank of Waterloo secured a judgment against said David O. Baker; and on November 15,1963 through its attorneys it issued an income execution under CPLR 5231 against Baker and delivered it to respondent Monroe County Sheriff; and on that day pursuant to said section of the CPLR the Sheriff demanded that Baker make voluntary 10% payments from his weekly wages to the Sheriff. Baker made no such payments *548 thereon and, pursuant to subdivision (d) of said 5231 of the CPLR, on December 26, 1963 the Sheriff served a copy of said income execution on Mr. Trick as above stated. Upon these facts petitioner asserts that its wage assignment should have priority over the income execution.
Although the statutes spell out the priorities in these matters in considerable detail, provision has not been made for the precise problem confronting us here. This is not a case in which there is an inherently right or wrong answer. What is needed is merely a good workable rule. It would be better had the Legislature foreseen and provided for this situation, for a matter of policy may be involved. Nevertheless, if the legislative scheme as revealed by the statutes sufficiently points the way to the legislative intent, it is proper for the court to supply the gaps consistently with such intent.
Under former provisions of law the first creditor to reach the employer had priority (see Egelhof v. Inwood Credit Union, 155 Misc. 790); but this led to troubles for the debtor and his employer. In article 3-A of the Personal Property Law and 5231 of the CPLR the Legislature enacted provisions designed to ease the effect of wage assignments and income executions on the debtor and his employer, while also protecting the creditor. (See 7 Weinstein-Korn-Miller, pars. 5231.02, 5231.05; Practice Commentary, Siegel, McKinney’s Cons. Laws, Book 7B, § 5231, pp. 161-162.) They require the assignee and the Sheriff to give the debtor time in which to make voluntary payments. The present difficulty is that the waiting periods of the two statutes are not co-ordinated and under certain circumstances may give one creditor an undue advantage over another.
■Section 48-a (subd. 2, par. b) of the Personal Property Law provides that an assignment of future earnings is subject to any other similar assignment which has previously become subject to payment or to any garnishment of earnings which is “in force” when the assignment is filed and served on the employer. CPLR 5231 (subd. [h]) provides that two or more income executions against the same person and employer shall be satisfied in the order in which they are delivered to the Sheriff or other enforcement officer (cf. CPLR 5234, subd. [b]). That delivery of such execution to the Sheriff is intended to protect a judgment creditor is further supported by the provision in said subdivision (h) that if a Sheriff returns such an execution unsatisfied because he cannot find the debtor in his county, within 20 days of such return the execution may then be delivered to a Sheriff of any other county where the debtor may be found, and the priority of such execution shall be determined by the time of its delivery to the first Sheriff.
*549 Thus, the priority of one filed assignment of wages over another such assignment is clearly provided for, and the priority of one delivered income execution over a later such execution is provided for. Under section 48-a of the Personal Property Law (subd. 2, par. [b], cl. [2]) a wage assignment is subordinate to an income execution which is “ in force ” when the assignment is filed with the employer.
Petitioner argues that the income execution in question was not “in force” when it filed its wage assignment because the debtor had not started to make voluntary payments thereunder (and never did make such payments), and was not “ in force ” when the employer began withholding 10% of the debtor’s wages under the assignment without knowledge of the existence of the income execution. It argues that under subdivision (d) of 5231 of the CPLR the “ levy ” was made by the Sheriff after the assignment was effective, and hence it must be junior to the assignment. It further points out that to give the income execution priority now will result in reversing a priority in fact established by the filing of the assignment and commencement of withholding thereunder by the employer without knowledge of the execution. Moreover, the Sheriff might have delayed for months in effectuating the “ levy ” by failing to deliver it for a long time to the employer. (The Sheriff’s delay of an extra 20 days, until the day after Christmas, is quite understandable in this case.)
An equally practical argument in answer to petitioner is that it cannot complain, because, during the period of the Sheriff’s delay, the employer withheld wages for petitioner, and so to that extent it was the gainer. Moreover, had the debtor begun making voluntary payments to the Sheriff under the income execution, his employer would not have known about it and still, in the very nature and scheme of the act (permitting not more than one 10% deduction at a time), the income execution would have been “ in force ” so as to prevent an effective subsequent income execution or wage assignment upon his earnings until the first was paid. Petitioner concedes that had the debtor made any payment to the Sheriff, it would have constituted a “ garnishment ”, and would have effected a priority status for the execution. Thus, there is something to be said for and against the contentions of both the petitioner and the Sheriff. To adopt petitioner’s proposal would destroy the efficacy of the original delivery of the income execution in these situations and defeat the legislative scheme.
*550 The functioning of the two acts above discussed leaves room for improvement, certainly in the situation here confronting us; but that does not mean that we may judicially emasculate them or impair their operation in accordance with the apparent legislative intent.
It is held, therefore, that the delivery of the income execution to the Sheriff before, the filing and service of the wage assignment established priority in the income levy.
It should be noted that to adopt petitioner’s suggestion might facilitate collusion between a debtor and a creditor to defeat a judgment creditor who has proceeded under 5231. It should also be said, to ease the minds of employers, that they need have no concern for income executions against employees, whether or not the employees are making voluntary payments thereunder to a Sheriff or an enforcement officer, until due notice of the existence of such an execution has been given to the employer.